AO 106A  (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
## for the

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
)
One Electronic Device for Investigation for Evidence of )
Violations of 18 U.S.C. § 2242, 2242, and 1001(a)(2) )
)

Case No. CR 24-71647-SVK

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2242, 2242, and 1001(a)(2) | Aggravated Sexual Abuse, Sexual Abuse, False Statements to a Government Agency |

The application is based on these facts:

See attached affidavit of VA OIG Special Agent William Elliott

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

William Elliot/SvK w/permission
*Applicant's signature*

William Elliott, VA OIG SA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: _____11/20/24_____

*Judge's signature*

City and state:  San Jose, CA

Hon. Susan van Keulen, United States Magistrate Judge
*Printed name and title*

## <u>AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE AN ELECTRONIC DEVICE</u>

I, William Elliott, Special Agent with the Department of Veterans Affairs, Office of Inspector General, being first duly sworn, hereby depose and state as follows:

## <u>INTRODUCTION AND AGENT BACKGROUND</u>

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of an electronic device seized within this district and currently in law enforcement possession, and the extraction from that device of electronically stored information relevant to the target offenses described herein.

2.      The property to be searched, described more fully in Attachment A, is the full forensic image of an iPhone 11 cellular telephone with serial number F4GCFZ2GN72L ("the Device") currently located in VA OIG custody.  This forensic image was previously generated pursuant to a search warrant issued by the Court (pursuant to N.D. Cal. Search Warrant 23-CR-70674-SVK) authorizing the search of the iPhone 11 described above, which at the time was located in the VA Police evidence vault, located at 3801 Miranda Avenue, Palo Alto, CA 94304. The Device was seized from target Onofre Salas-Lozano on April 28, 2023, incident to his arrest.

3.      The requested warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.  The warrant will be executed according to the protocols outlined in Attachment C.  Attachments A, B, and C are attached hereto and incorporated by reference.

4.      On May 10, 2023, the Court issued a search warrant authorizing the search of this device with a date range of March 1, 2021 through July 31, 2021. *See* CR 23-70674 SVK.

5.      The results of that search revealed that the device had been "factory reset" on March 27, 2022, and thus did not contain evidence from the time period sought by the prior warrant. As described in detail below, the government indicted the defendant and the case is set for a jury trial on December 10, 2024. In court filings in recent weeks, the defendant has asserted that he did, in fact, have a consensual sexual relationship with the Victim. As noted below, this is inconsistent with his statements to law enforcement in July 2021 that he never had a sexual relationship or sex with the Victim. In light of this recently announced consent defense, I now seek permission to review the Device seized from the defendant for evidence, fruits, and instrumentalities of the charged offenses between August 1, 2021 until April 28, 2023.

6.      Based on my training and experience and the facts set forth in this warrant there is probable cause to believe that the subject device contains evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2241(a) (Aggravated Sexual Abuse), 2242(1) (Sexual Abuse), and 1001(a)(2) (False Statements to a Government Agency) committed by Salas-Lozano (collectively, the Target Offenses).

7.      I am a Special Agent with the Department of Veteran Affairs, Office of Inspector General (VA OIG), Criminal Investigations Division. I am a criminal investigator on behalf of the United States within the meaning of 18 U.S.C. § 2510(7) and am thereby empowered to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516. VA OIG Special Agents are empowered by the Inspector General Act (PC 95-492) to carry firearms, execute warrants, and make arrests relating to programs and operations of the VA. I have been a

2

federal law enforcement officer since July 2004. I have been employed as a VA OIG Special Agent since September 2019 and am assigned to the VA OIG Northwest Field Office. Prior to my employment with VA OIG, I spent more than four years as a Special Agent with the U.S. Department of Homeland Security, Homeland Security Investigations (HSI) and more than nine years as a Special Agent with the U.S. Department of State, Diplomatic Security Service (DSS).

8.      I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center, the HSI Special Agent Training Program, and the DSS Special Agent Training Program. I have received extensive training and have actual experience in law enforcement investigations and have received training relating to federal criminal procedure and federal statutes.  I am responsible for enforcing numerous federal criminal statutes, including violations of Title 18 and Title 38 of the United States Code. My duties include investigating fraud, waste, and abuse within the VA, other violations of federal law impacting the VA, as well as other duties as authorized by the Inspector General Act.

9.      The facts in this affidavit come from my personal observations, my knowledge, training, and experience, information from records, reports, and databases, and information obtained from other agents and officers, experienced investigators, and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### APPLICABLE STATUTES

10.      This investigation concerns alleged violations of the Target Offenses and criminal statutes listed below.

11.      18 U.S.C. § 2241(a) (Aggravated Sexual Abuse) outlaws the use of force to cause

3

any person to engage in a sexual act in a place within the special maritime and territorial

jurisdiction of the United States, which includes federal facilities, such as Veterans Affairs

Hospitals.

12.     18 U.S.C. § 2242(1) (Sexual Abuse) outlaws causing any person to engage in a

sexual act by threatening or placing that other person in fear (other than the fear of death, serious

bodily injury, or kidnapping) in a place within the special maritime and territorial jurisdiction of

the United States, which includes federal facilities, such as Veterans Affairs Hospitals.

13.     18 U.S.C. § 1001(a)(2) outlaws knowingly and willfully making a materially false

statement or representation in a matter within the jurisdiction of the executive branch of the

Government of the United States.  There is an enhanced sentence associated with false

statements in connection with an investigation of a Chapter 109A offense, which includes

violations of 18 U.S.C. §§ 2241 and 2242.

## PROBABLE CAUSE

14.     On July 7, 2021, the Victim contacted the VA Police Service (VAPS) in Palo

Alto, CA and alleged that she was forcibly raped by her supervisor, Onofre Salas-Lozano, on

July 2, 2021.

15.     At the time of the alleged attack, the Victim and Salas-Lozano were employed by

Quality Services International (QSI), which provides janitorial services at the VA Palo Alto

Hospital in Palo Alto, CA.   The Victim was employed as a contract custodian and Salas-Lozano

was the Victim's direct supervisor.

16.     On July 9, 2021, VA OIG special agents and VAPS interviewed the Victim in person on the VA Livermore campus.  The Victim identified Salas-Lozano as her assailant and described how he isolated her in an empty patient exam room during a late-night shift on July 2, 2021.  Once inside the room, Salas-Lozano turned off the lights and blocked her from leaving the room.  The Victim asked him what he was doing, and he said in Spanish "you know you want this too."  He forcefully pulled the Victim's leggings down to her knees.  She pulled them back up and told him to stop.  He forced them down again.  This happened multiple times.  On roughly the fourth time that he shoved down her leggings, the Victim hit her knee on the table as she was pulling them up.  Salas-Lozano came up behind her, boxed her against the exam table and forcibly penetrated her vagina with his penis.  He quickly finished and ejaculated inside of her and onto her underwear.  The Victim was shocked at his behavior and very afraid. She did not keep trying to fight him off because she was afraid that he would hurt her further and she knew no one was around to help her.

17.     During the interview, the Victim stated that she had previously communicated with Salas-Lozano on both his personal (\*\*\*-\*\*\*-5093) and company-issued (\*\*\*-\*\*\*-8497) cellular phones.  Following the alleged attack, she sent religious-themed YouTube videos to Salas-Lozano to have him reflect on his actions against her.

18.     On July 9, 2021, after the interview concluded, nurses at Santa Clara Valley Medical Center conducted a sexual assault examination of the Victim, which revealed injuries indicative of a non-consensual penetration of her vagina.  During the examination, the Victim again identified Salas-Lozano, her supervisor, as her attacker.

19.    On July 20, 2021, Salas-Lozano voluntarily agreed to be interviewed by VA OIG special agents and VAPS in person on the VA Menlo Park campus.  During the interview, Salas-Lozano confirmed that he previously had text message exchanges with the Victim on both his personal (***-***-5093) and company-issued (***-***-8497) cellular phones.

20.    Additionally, after being provided with an advisement of rights, Salas-Lozano repeatedly denied ever having sexual intercourse with the Victim.  However, a later forensic analysis of the Victim's underwear from the night of the attack revealed the presence of Salas-Lozano's sperm, statistically matched to Salas-Lozano's DNA from a buccal swab that he provided to law enforcement.

21.    During the July 20, 2021 interview with Salas-Lozano, he showed agents YouTube videos sent to him by the Victim following the alleged attack.  Salas-Lozano consented to allowing the VAPS investigator to take a picture of his phone's screen showing the video.  Salas-Lozano later forwarded the videos to the VAPS investigator via text message.

22.    Pursuant to an investigative request, on October 25, 2021, QSI voluntarily provided agents with cellular call and data records for Salas Lozano's work-issued phone.  These records confirmed a pattern of communication between the Victim and Salas Lozano but did not include the content of the communications.

23.    On March 10, 2023, VA OIG agents met with the Victim and were granted consent to review her phone.  This review revealed that the oldest text messages were from December 2022.  The Victim explained that she has had two or three phones since the alleged attack and some messages did not transfer over when she got a new phone.

24.     Salas-Lozano was federally indicted on April 6, 2023 under case number 23-CR-00101 EJD.  The Indictment charges three violations: 18 U.S.C. §§ 2241(a) (Aggravated Sexual Abuse), 2242(1) (Sexual Abuse), and 1001(a)(2) (False Statements to a Government Agency).  A warrant for Salas-Lozano's arrest was issued with the Indictment.  Salas-Lozano was arrested on April 28, 2023 and the Device, an iPhone 11 telephone with serial number F4GCFZ2GN72L, was seized from Salas-Lozano at that time.

25.     The Device, which is Salas-Lozano's personal phone, was then in the lawful possession of the VAPS and stored in their evidence vault, located at 3801 Miranda Avenue, Palo Alto, CA 94304.  Pursuant to the federal search warrant, the device was transferred to VA OIG Assistant Special Agent-in-Charge Robert Lupe, where a complete forensic image of the device was made, pursuant to the search warrant.

26.     ASAC Lupe examined the phone image pursuant to the search warrant and found that it had been "factory reset" on "3/27/2022 9:03:03 PM (UTC-4)", which was memorialized in a Cellebrite extraction report.  I understand the government produced a copy of that report to the defense in discovery in this case.  In August 2024, the defense asked for a copy of the full forensic image of the phone, which ASAC Lupe provided to the defense.  A full forensic image of the device remains in VA OIG custody and would be the Device examined pursuant to the instant requested warrant, subject to the limitations described herein.

27.     A jury trial in this case is set to begin on December 10, 2024 before the Honorable Edward J. Davila, United States District Judge.  I understand that the government and the defense recently litigated a motion wherein the defense asserted in their motion that "There is no physical evidence proving that Mr. Salas had sex with J.J. where and when she claims, and no

7

physical evidence that any sexual activity between them at any time was anything other than completely consensual." ECF 53 at 14. At no time during the defendant's July 2021 interview with federal agents did he say that he had a sexual relationship with the Victim, let alone that it was consensual. I also understand that the defendant had been placed on leave by his employer QSI between approximately July 2021, and was arrested in April 2023. Given that the phone seized from the defendant appeared to be the phone he was using at the time of his arrest in April 2023, and we have since learned it was factory reset in March 2022, I have reason to believe that the phone may contain evidence, fruits, and instrumentalities of the charged crimes that occurred outside of the previous date range examined: March 1, 2021 through July 31, 2021.

28.     Based on my training and experience, individuals who commit the charged crimes may, including after their commission, create communications, documents, files, images, recordings, call records, logs, histories, messages, electronic mail, or recorded messages that relate to, reference, or constitute evidence, fruits, or instrumentalities of the charged crimes. For example, the accused individual may attempt to contact potential witnesses to dissuade them from cooperating with a criminal investigation or agree to tell investigators a version of events that favors him. This is particularly the case when a defendant drastically changes his story on the eve of trial . Accordingly, I have probable cause to believe that the materials sought in Attachment B may be found on the cellular telephone within the requested date range of August 1, 2021 to the April 28, 2023.

## TECHNICAL TERMS

29.     Based on my training and experience, I use the following technical terms to convey the following meanings:

8

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.

9

This storage media can contain any digital data, including data unrelated to photographs or videos.

c. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

d. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

30.    Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at https://www.apple.com/by/iphone-11/specs/, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

31.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

32.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the Target Offenses described in the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

> e.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

> f.   Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

> g.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

11

h.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

i.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

33.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant and its attachments. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

34.  *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

12

## CONCLUSION

35.     I submit that this affidavit supports probable cause that the Device contains evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2241(a) (Aggravated Sexual Abuse), 2242(1) (Sexual Abuse), and 1001(a)(2) (False Statements to a Government Agency) committed by Salas-Lozano.  I respectfully request that the court issue the requested search warrant authorizing the examination of the Device to seek the items described in Attachment B, following the protocols established in Attachment C.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

William Elliot/SvK w/permission
William Elliot
Special Agent
Department of Veterans Affairs
Office of Inspector General

Sworn to before me over the telephone pursuant to Fed. R. Crim P. 4.1 and 4(d) and signed by me on this  20th  day of November, 2024.

_____
HON. SUSAN VAN KEULEN
United States Magistrate Judge

13

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The property to be searched is a forensic image (currently in VA OIG custody) of the iPhone 11 telephone with serial number F4GCFZ2GN72L, which was previously located in the VAPS evidence vault at 3801 Miranda Avenue, Palo Alto, CA 94304 and which was subsequently imaged pursuant to N.D. Cal. Search Warrant 23-CR-70674-SVK.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

1.      All materials constituting or containing fruits, evidence, and instrumentalities of violations of 18 U.S.C. §§ 2241(a) (Aggravated Sexual Abuse), 2242(1) (Sexual Abuse), and 1001(a)(2) (False Statements to a Government Agency) (TARGET OFFENSES) involving Onofre Salas-Lozano and/or Victim and occurring from August 1, 2021 through April 28, 2023, specifically the following items:

   a.  All communications, documents, files, images, or recordings in any format, relating to the actual, attempted, or intended sexual abuse, sexual battery, or sexual harassment of any person, including Victim;

   b.  All communications, documents, files, images, or recordings in any format, reflecting the actual, attempted, or intended concealment, falsification of records, or any false or misleading statements relating to the sexual abuse, sexual battery, or sexual harassment of any person, including Victim;

   c.  All communications, documents, files, images, or recordings in any format, call records, logs, histories, messages, electronic mail, whether incoming or outgoing, including with third parties, associated with the TARGET OFFENSES, including but not limited to materials discussing or related to Salas-Lozano's interactions with the Victim;

   d.  All records, documents, files, images, recordings, stored contact data, and other information, associated with Victim, to include the individual's name, address, email address(es) and/or telephone number(s).

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

**ATTACHMENT C**

**COMPUTER SEARCH PROTOCOL - NORTHERN DISTRICT OF CALIFORNIA**

1. In executing this warrant, the government will begin by ascertaining whether all or part of a search of a device or media that stores data electronically ("the device") reasonably can be completed at the location listed in the warrant ("the site") within a reasonable time. If the search reasonably can be completed on site, the government will remove the device from the site only if removal is necessary to preserve evidence, or if the item is contraband, a forfeitable instrumentality of the crime, or the fruit of a crime.

2. If the government determines that a search reasonably cannot be completed on site within a reasonable time period, the government must determine whether all or part of the authorized search can be completed by making a mirror image of, or in some other manner duplicating, the contents of the device and then conducting the forensic review of the mirror image or duplication off site. The government will complete a forensic review of that mirror image within 120 days of the execution of the search warrant.

3. In a circumstance where the government determines that a mirror image of the contents of a device cannot be created on site in a reasonable time, the government may seize and retain that device for 60 days in order to make a mirror image of the contents of the device.

4. When the government removes a device from the searched premises it may also remove any equipment or documents ("related equipment or documents") that reasonably appear to be necessary to create a mirror image of the contents of the device or conduct an off-site forensic review of a device.

5.    When the government removes a device or related equipment or documents from the site in order to create a mirror image of the device's contents or to conduct an off-site forensic review of the device, the government must file a return with a magistrate judge that identifies with particularity the removed device or related equipment or documents within 14 calendar days of the execution of the search warrant.

6.    Within a reasonable period of time, but not to exceed 60 calendar days after completing the forensic review of the device or image, the government must use reasonable efforts to return, delete, or destroy any data outside the scope of the warrant unless the government is otherwise permitted by law to retain such data.

7.    The time periods set forth in this protocol may be extended by court order for good cause.

8.    In the forensic review of any device or image under this warrant the government must make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, or other electronically-stored information that are identified with particularity in the warrant, while minimizing exposure or examination of irrelevant, privileged, or confidential files to the extent reasonably practicable.

9.    For the purposes of this search protocol, the phrase "to preserve evidence" is meant to encompass reasonable measures to ensure the integrity of information responsive to the warrant and the methods used to locate same.